UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Menorah Campus, Inc. *dba*<br>The Harry and Jeanette Weinberg Campus, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10127 (CLB)<br>(Jointly Administered) |

**OBJECTION OF SODEXO OPERATIONS, LLC
TO FOUNDATION FOR JEWISH PHILANTHROPIES, INC.'s MOTION
FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

Sodexo Operations, LLC ("Sodexo"), by and through its undersigned counsel, hereby files this Objection ("Objection") to *Foundation for Jewish Philanthropies, Inc.'s Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. 362(d)* (the "Motion for Relief")[1] [D.I. 184], and in support thereof states as follows:

**PROCEDURAL AND FACTUAL BACKGROUND**

1. On February 6, 2025 (the "Petition Date"), Menorah Campus, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et. seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"), which commenced the above-captioned case (the "Bankruptcy Case"). The Debtor's affiliated debtors filed their voluntary petitions for relief the following day.

2. The Debtor remains in control of its assets and properties as debtor in possession, and no Official Committee of Unsecured Creditors has been formed in the Bankruptcy Case.

3. The Debtor is the owner of that certain real property and improvements located at

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion for Relief.

471 John James Audubon Parkway, Amherst, New York (the "Property").

4. According to the Debtor's schedules, the Property is encumbered by a series of mortgages. Foundation for Jewish Philanthropies ("FJP") appears to hold the first mortgage on the Property in the original principal amount of $4,000,000, as alleged in the Debtor's motion for use of cash collateral [D.I. 59]. Sodexo is the holder of a subordinate mortgage on the Property.

5. In the Motion for Relief, FJP alleges that on May 16, 2016 it provided a $4,000,000.00 working capital loan facility to the Debtor which is secured by a first mortgage on the Property. FJP also asserts that it has a general lien and security interest in all of the Debtor's assets, including without limitation, accounts receivable, personal property and general intangibles.

6. Despite the principal amount of the line of credit being only $4 million, FJP contends that it is owed $5,313,355.81 as of April 2, 2025 (the "Claimed FJP Indebtedness") and that such Claimed FJP Indebtedness is secured its first Mortgage on the Property. FJP does not support its Motion for Relief with evidence of the Claimed FJP Indebtedness.

7. Sodexo and the Debtor were parties to a Management Agreement, dated July 17, 2009, as amended from time to time, pursuant to which Sodexo provided the Debtor with various building services, including housekeeping, laundry and maintenance services at the Debtor's facilities. Sodexo and the Debtor also were parties to a separate Management Agreement, dated January 15, 2015, pursuant to which Sodexo provided dining services at the Debtor's facilities.

8. Pursuant to a Settlement Agreement dated February 15, 2024 between the Debtor and Sodexo, the Debtor executed a Collateral Mortgage on the Property in favor of Sodexo in the face amount of $2,000,000 to secure repayment of sums due to Sodexo which exceeded that figure (the "Sodexo Mortgage"). The Mortgage was recorded on February 29, 2024 at bk/pg 14119/6085. A

2

Case 1-25-10127-CLB, Doc 196, Filed 06/27/25, Entered 06/27/25 13:07:04, Description: Main Document, Page 2 of 11

true and correct copy of the Sodexo Mortgage is attached hereto as Exhibit "A" and incorporated by this reference.

9. The Debtor did not timely satisfy its obligations under the Settlement Agreement and defaulted pre-petition. As a result, the Debtor is indebted to Sodexo as of the Petition Date in an amount not less than **$2,611,791.12**, which includes principal and interest as of a date certain.

10. FJP does not support the Motion for Relief with any appraisal or other evidence of the value of the Property.

## OBJECTION

11. FJP seeks stay relief under both subsections of §362(d). Under 11 U.S.C. § 362(d)(1), a creditor may be granted relief from the automatic stay for cause, including a lack of adequate protection for its interest in the property. Under 11 U.S.C. § 362(d)(2), relief may be granted if a debtor has no equity in the property and the property is not necessary to an effective reorganization.

12. "The term 'cause' is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis." *Manhattan King David Rest. Inc. v. Levine,* 163 B.R. 36, 40 (S.D.N.Y. 1993) (*citing See In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir. 1990).

13. The moving party has the burden to make a *prima facie* showing that "cause" exists for relief from the stay. *See Sonnax Indus., Inc.,* 907 F.2d at 1285. "The burden of proof on a motion, like this one, to lift the automatic stay is a shifting one; section 362(d)(1) requires an initial showing of cause by the movant, while section 362(g) places the burden of proof on the debtor for all issues other than the debtor's equity in property." *In re Kaplan Breslaw Ash, LLC,* 264 B.R. 309, 321–322 (Bankr. S.D.N.Y. 2001).

14. Adequate protection may be provided in the form of an "equity cushion." For purposes of §362(d)(1), the equity cushion is determined by the value of the property after the claim of the creditor seeking relief from the automatic stay and all senior claims are deducted. *Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assoc., Ltd.),* 61 F.3d 197, 207 (3d Cir. 1995).

15. Under § 362(d)(2) the Court conducts a slightly different analysis to determine whether Debtor has equity in the property in question and whether it is necessary for an effective reorganization. Whether a debtor has any equity in a property for purposes of § 362(d)(2) is determined by comparing the amount of all liens against the property to its value, not just the lien in question and all superior liens. *Id.* at 206. "[A]ll encumbrances against the subject property are totalled,whether or not all lienholders have joined in the request for relief from the stay." *Nazareth Nat'l Bank & Trust Co. v. Trina–Dee, Inc. (In re Trina–Dee, Inc.),* 26 B.R. 152, 154 (Bankr. E.D.Pa. 1984), *aff'd,* 731 F.2d 170 (3d Cir. 1984) (*citing In re Mikole Developers, Inc.*, 14 B.R. 524 (Bankr. E.D.Pa. 1980).

16. Therefore, while different approaches are pursued when calculating equity for purposes of (d)(1) when compared to (d)(2), both analyses require that a court determine the value of the collateral.

17. Here, FJP has offered no evidence of the value of the Property. Without such evidence, the Court, for example, is unable to determine whether there is a sufficient equity cushion to adequately protect FJP for purposes of §362(d)(1).

18. Since it is FJP's burden to demonstrate the Debtor's equity in the Property for purposes of both subsections of §362(d), FJP's failure to offer any evidence of value justifies this Court's denial of the Motion for Relief.

4

19. Even if the Court is inclined to consider FJP's request despite FJP presenting no evidence of the Property's value or of its Claimed Indebtedness, it is premature to grant FJP relief from stay to foreclose on the Property.

20. On the Debtor's schedule A/B, the Debtor scheduled its interest in the Property with a value of $7,000,000 based on the Debtor's pre-petition agreement of sale with WinnDevelopment. While the Debtor has not yet sought to assume that pre-petition agreement, it provides some indication of the value of the Property.

21. Even assuming FJP's Claimed Indebtedness is accurate, a sale of the Property for $7 million—assuming that it closes—would be more than sufficient to pay FJP in full, not even taking into account the other sources of recovery FJP claims an interest in.

22. Moreover, even if FJP satisfies its burden of demonstrating a lack of equity in the Property for purposes of §362(d)(2),[2] FJP is not entitled to stay relief unless the Property is not necessary for an effective reorganization. In the Motion for Relief, FJP incorrectly assumes that the Debtor's planned orderly liquidation of its assets cannot satisfy this standard.

23. A number of courts have determined that liquidation may be an "effective reorganization" for stay relief purposes. *In re Kadlubek Family Revocable Living Trust*, 545 B.R. 660, 666 (Bankr. D.N.M. 2016); *In re Bloomingdale Partners*, 155 B.R. 961, 988 (Bankr. N.D.Ill. 1993); *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988). *See, also, United Sav. Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371 n.14 (5th Cir. 1987), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("[T]here may be circumstances under which the debtor is able to satisfy the "effective reorganization" test of § 362(d)(2) by showing that the property at issue is necessary to an effective liquidation of the debtor under

---

[2] For purposes of §362(d)(2), equity is determined after consideration of all encumbrances against the Property these purposes which include those of all subordinate mortgagees such as Sodexo.

Chapter 11, as distinguished from an effective rehabilitation of the debtor.").

24. In Chapter 11 cases, where stay relief to permit foreclosure is sought, debtors often express a desire to control the sale of the property based on the reasonable conclusion that a higher price will be obtained through normal commercial marketing efforts rather than through foreclosure. Thus, a lack of equity in property is not necessarily fatal so long as the secured creditor is adequately protected and the debtor is making progress toward a successful liquidation. *See Kadlubek Family Revocable Living Tr.*, 545 B.R. at 666-67.

25. Here, the Debtor has made clear its intentions to engage in an orderly liquidation of assets to maximize recovery for all creditors, which would include the holders of subordinate mortgages on the Property such as Sodexo. That opportunity will be lost if the Court at this time permits FJP to exercise its remedies to foreclose on the Property.

26. This result would be especially inequitable when FJP claims to be secured by interests in various of the Debtor's real and personal property interests, which junior creditors may not have an interest. FJP has claimed a general security interest in all of the Debtor's properties including its interests in non-debtor subsidiaries that hold properties such as the Greenwood Residences and Phelan Health Weinberg, all of which the Debtor has claimed it intends to liquidate.[3]

27. This Court has the equitable power to require the marshaling of assets to prevent FJP from draining the Property to satisfy its debt, leaving junior creditors exposed.

28. Generally, "the priority of liens is determined by the principle 'first in time, first in right.'" *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963) (*quoting United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). However,

---

[3] Sodexo reserves all of its rights and remedies with respect to FJP's asserted secured claim against these property interests.

courts have recognized a limited equitable exception to this general rule—the doctrine of marshaling.

29. Marshaling is an equitable principle designed to protect the rights of a junior creditor by compelling a senior creditor to attempt to collect its claim first from another source unavailable to the junior creditor. *See Meyer*, 375 U.S. at 237. "The doctrine of marshaling applies where there is a common debtor of senior and junior creditors and the senior creditor alone has the right to resort to both the common fund and a separate fund." *Fundex Capital Corp. v. Balaber–Strauss (In re Tampa Chain Co.)*, 53 B.R. 772, 777 (Bankr. S.D.N.Y. 1985); accord *In re Vermont Toy Works, Inc.*, 135 B.R. 762, 767 (D.Vt. 1991); *In re Arlco, Inc.*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999); *In re America's Hobby Ctr., Inc.*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1998).

30. "Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases." *Matter of Colonial Realty Co.*, 134 B.R. 1017, 1022 (Bankr. D. Conn. 1991), *aff'd sub nom.*, *In re Colonial Realty Co.*, No. CIV. 3:91-200X(JAC), 1991 WL 487192 (D. Conn. Dec. 30, 1991), *aff'd*, 980 F.2d 125 (2d Cir. 1992).

31. Moreover, the Debtor, as a debtor-in-possession, has the trustee's standing to invoke the doctrine of marshaling due to its status of a hypothetical lien creditor. *See In re Glob. Serv. Grp., LLC*, 316 B.R. 451, 463 and fn. 12 (Bankr. S.D.N.Y. 2004)

32. FJP contends it has a secured interest in many of the Debtor's property interests, which the junior mortgagees on the Property apparently do not have. Before considering whether to grant FJP's Motion for Relief, which is premature also for the reasons expressed above, the Court should allow for fulsome consideration of a request for marshaling, whether by the Debtor or one or more of the subordinate mortgagees on the Property.

7

Case 1-25-10127-CLB, Doc 196, Filed 06/27/25, Entered 06/27/25 13:07:04, Description: Main Document, Page 7 of 11

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, Sodexo Operations, LLC respectfully requests that the Honorable Court sustain this Objection and deny the Motion for Relief, and grant such other and further relief as the Court deems just and equitable.

Dated: June 27, 2025  **BOND, SCHOENECK & KING PLLC**

                                       Andrew S. Rivera
                                       One Lincoln Center
                                       Syracuse, New York 13202
                                       Telephone: (315) 218-8000
                                       Facsimile: (315) 218-8100
                                       arivera@bsk.com

-and-

Dated: June 27, 2025  **BROWN NIMEROFF LLC**

                                    By: /s/ Jami B. Nimeroff
                                       Jami B. Nimeroff (*admitted pro hac vice*)
                                       1515 Market Street, Suite 1200
                                       Philadelphia, PA 19102
                                       Telephone: (267) 861-5330
                                       Facsimile: (267) 350-9050
                                       jnimeroff@brownnimeroff.com

*Counsel to Sodexo Operations, LLC*

## CERTIFICATE OF SERVICE

I, Jami B. Nimeroff, hereby certify that on this 27th day of June, 2025, I caused a true and correct copy of the foregoing to be electronically filed using the Court's CM/ECF System and served upon those parties requesting service therefrom. The document is available for viewing and downloading. I further certify that I caused a true and correct copy of the foregoing to be served upon the parties on the attached Service List via electronic mail.

*/s/ Jami B. Nimeroff*
Jami B. Nimeroff

# SERVICE LIST

Kevin R. Lelonek, Esquire
John K. Rottaris, Esquire
Gross Shuman P.C.
465 Main Street, Suite 600
Buffalo New York, 14202
klelonek@gross-shuman.com
jrottaris@gross-shuman.com

Joseph W. Allen, Esquire
The Office of the United State Trustee
for Region 2: Western District of
New York (Buffalo Division)
Attn: Joseph W. Allen, Esquire
USTPRegion02.bu.ecf@usdoj.gov

David Ferguson, Esquire
James H. Pulliam, Esquire
Polsinelli Law Firm
555 Fayetteville Street
Raleigh, North Carolina 27601
dferguson@polsinelli.com
jpulliam@polsinelli.com

Raymond L. Fink, Esquire
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
Rfink@lippes.com

Mary Clare Kane, Esquire
IRS at the United States Attorney's Office
Western District of NY, Buffalo Office
138 Delaware Avenue
Buffalo, New York 14202
mary.kane@usdoj.gov

Keyashia Monae Willis, Esquire
Barclay Damon LLP
Barclay Damon Tower 125 E. Jefferson Street
Syracuse, NY 13202
kwillis@barclaydamon.com

Jenny Park, Esquire
Mai Lan G. Rodgers, Esquire
Pension Benefit Guaranty Corporation
445 12th Street, S.W.
Washington, DC 20024
park.jenny@pbgc.gov
rodgers.mailan@pbgc.gov

James C. Thoman, Esquire
Hodgson Russ LLP
Guaranty Building
140 Pearl Street
Buffalo, NY 14202
jthoman@hodgsonruss.com

Robert D Hooks, Esquire
Woods Oviatt Gilman LLP
1900 Bausch & Lomb Place
Rochester, NY 14604
rhooks@woodsoviatt.com

Peter J Glennon, Esquire
Lauren Valle, Esquire
The Glennon Law Firm, P.C.
160 Linden Oaks Drive
Rochester, NY 14625
pglennon@glennonlawfirm.com
lvalle@glennonlawfirm.com

Jonathan M Horne, Esquire
Kevin Tompsett, Esquire
Thomas S Vangel, Esquire
Harris Beach Murtha Cullina PLLC
33 Arch Street
12th Floor
Boston, MA 02110
jhorne@harrisbeachmurtha.com
ktompsett@harrisbeachmurtha.com
tvangel@harrisbeachmurtha.com

James C. Thoman, Esquire
Hodgson Russ LLP
Guaranty Building
140 Pearl Street
Buffalo, NY 14202
jthoman@hodgsonruss.com

Angela Z. Miller  
Phillips Lytle LLP  
One Canalside  
125 Main Street  
Buffalo, NY  14203  
amiller@phillipslytle.com

Andrew O. Miller, Esquire  
Webster Szanyi LLP  
424 Main Street, Suite 1400  
Buffalo, NY  14202  
amiller@websterzanyi.cm