# EXHIBIT A



# COLLATERAL MORTGAGE

THIS COLLATERAL MORTGAGE (the "Mortgage") is made as of February 16, 2024, between Menorah Campus, Inc., a New York not for profit corporation with a principal place of business at 2700 North Forest Road Getzville New York 14068 ("Mortgagor"), and Sodexo Operations, LLC with a business address at 400 Airborne Parkway W, Cheektowaga, New York 14225 ("Mortgagee").

**RECITALS:**

A. Mortgagor is the owner of fee simple title to that certain parcel of real property (the "Land") being in the Town of Amherst, Erie County, New York, commonly known as 461-475 John James Audubon Parkway, Amherst, New York 14228 (S-B-L 41.03-1-47.11), as more particularly described in **Schedule A** annexed hereto, together with the buildings and other improvements located thereon (the buildings and other improvements now or hereafter located on such parcel of Land being hereinafter referred to as the "Improvements"; the Land, together with such Improvements, being hereinafter collectively referred to as the "Premises"). The Premises is located in the State of New York (the "State").

B. Mortgagor and Mortgagee entered into a certain Settlement Agreement (the "Agreement") dated of even date herewith and executed and delivered simultaneously herewith, pursuant to which Mortgagor has agreed to pay Mortgagee Two Million U.S. Dollars ($2,000,000.00) (the "Settlement Amount").

C. To induce Mortgagee to enter into the Agreement and to secure payment of the Settlement Amount under the Agreement, Mortgagor has agreed to the execution and delivery of this Mortgage (the "Mortgage").

**1. Granting Clause; Habendum**

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and legal sufficiency whereof are hereby acknowledged, and as an inducement to Mortgagee to enter into the Agreement, and to secure the payment of an indebtedness in the principal sum of TWO MILLION AND 00/100 U.S. DOLLARS ($2,000,000.00), any additional amounts referred to in the Agreement, and all other sums which may or shall become due hereunder or under the Agreement or any of the other documents evidencing, securing or executed in connection with the Agreement, together with the Agreement and this Mortgage and any other document executed and delivered in connection therewith, as any of the same may, from time to time, be modified, amended or supplemented, (being hereinafter collectively referred to as the "Transaction Documents"), and including the costs and expenses of enforcing any provision of the Agreement, this Mortgage or any of the other Transaction Documents (all such sums being hereinafter collectively referred to as the "Debt"), and in order to charge with such performance and with such payments the Premises and other property hereinafter described, Mortgagor has created a security interest in and DOES HEREBY WARRANT, PLEDGE, TRANSFER, SET OVER, ASSIGN, GIVE, GRANT, BARGAIN, SELL, CONVEY,

1

CONFIRM AND MORTGAGE TO MORTGAGEE, ITS SUCCESSORS AND ASSIGNS, all right, title and interest of Mortgagor now owned, or hereafter acquired, in and to the Premises,

**TOGETHER WITH** all right, title and interest of Mortgagor, if any, now owned, or hereafter acquired, in and to the following property, rights and interests (the Premises, together with such property, rights and interests, being hereinafter collectively referred to as the "Mortgaged Property"):

(a) all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, title, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises (including, without limitation, gas, oil and mineral rights, air rights, development rights and any other rights, however denominated, to construct floor area on the Land), and all right, title and interest of Mortgagor in, including any right to use and occupy, any land adjacent to the Land, and any land lying in the bed of any street, road or avenue, open or proposed, in front of or adjoining the Land, and any and all sidewalks, drives, curbs, passageways, streets, spaces and alleys adjacent to or used in connection with the Premises;

(b) all machinery, apparatus, equipment, fittings, fixtures and other property of every kind and nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest (to the extent same can be mortgaged or an interest therein can be granted if not owned by Mortgagor), now or hereafter located upon the Premises or any portion thereof, or appurtenances thereto, and used in connection with the present or future operation and occupancy of the Premises or any portion thereof, and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest (to the extent same can be mortgaged or an interest therein can be granted if not owned by Mortgagor), now or hereafter located in or upon the Premises or any portion thereof, and any building equipment, materials and supplies obtained for use in connection with the Premises or any portion thereof, and all additions, replacements, modifications and alterations of any of the foregoing, including, but without limiting the generality of the foregoing, all heating, lighting, incinerating, waste removal and power equipment, engines, pipes, tanks, motors, conduits, switchboards, radio, television, security and alarm systems, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus, air cooling and air conditioning apparatus, escalators, elevators, ducts and compressors (collectively, the "Equipment"). All Equipment is part and parcel of the real estate and appropriated to the use of the real estate and, whether or not affixed or annexed to the Premises, shall for the purpose of this Mortgage be deemed conclusively to be real estate and mortgaged hereby;

(c) all other furniture, furnishings, decorations, fixtures and equipment owned by Mortgagor and now or hereafter installed in, affixed to, placed upon or used in connection with the Premises or the business conducted by Mortgagor thereon, including, without limitation, communication systems, computer systems, hardware and software applicable to the Premises), furniture, carpeting, art work, lighting fixtures, millwork, draperies, kitchen, restaurant, bar and lounge equipment, laundry equipment, cash

2

registers, safes, safety deposit boxes, office furniture, athletic and pool equipment, gift shop equipment, employees' lockers, coat racks, linens, blankets, pillows and uniforms (to the extent each of the foregoing shall exist), all present and future "accounts", "equipment", "inventory" and "general intangibles" (as such terms are defined in the Uniform Commercial Code (the "Code")) (collectively, the "Personal Property");

(d) all awards or payments, and any interest paid or payable with respect thereto, which may be made with respect to all or any portion of the Premises, whether from the exercise of right of condemnation, eminent domain or similar proceedings (including any transfer made in lieu of the exercise of said right), or from any taking for public use, or for any other injury to or decrease in the value of all or any portion of the Premises (including, without limitation, any awards resulting from a change of grade of streets and awards for severance damages), all of the foregoing to be held applied and paid in accordance with the provisions of this Mortgage (collectively, the "Condemnation Proceeds");

(e) all proceeds of, and any unearned premiums on any insurance policies covering all or any portion of the Premises, the Equipment, the Personal Property and/or the Rents (as hereinafter defined) (the "Policies"), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to all or any portion of the Premises, the Equipment and/or the Personal Property, and any interest actually paid with respect thereto, all of the foregoing to be held, applied and paid in accordance with the provisions of this Mortgage (collectively, the "Insurance Proceeds");

(f) all leases and other agreements affecting the use or occupancy of all or any portion of the Premises now in effect or hereafter entered into (including, without limitation, subleases, licenses, concessions, tenancies and other occupancy agreements covering or encumbering all or any portion of the Premises), together with any guarantees, supplements, amendments, modifications, extensions and renewals of the same, and all additional remainders, reversions, and other rights and estates appurtenant thereto (collectively, the "Leases") and absolutely and presently all rents, revenues which Mortgagor generates from the collection of rents, additional rents, percentage rents, revenues, issues, profits, cash collateral, royalties, income, bonuses, rights and benefits due and other benefits now or in the future payable under the Leases, and all security deposits, advance rentals and payments of similar nature (subject to the rights of lessees or depositors thereof) held by Mortgagor in connection with the Leases and all proceeds from any and all concessions and license agreements, if any, and all other fees, charges, accounts, payments, income, issues, profits and benefits of any nature arising from the possession, use, occupancy or enjoyment of the Mortgaged Property (collectively, the "Rents"), together with the right, but not the obligation, following an Event of Default (as hereinafter defined) by Mortgagor under this Mortgage or any of the other Transaction Documents, to exercise options, to give consents and to collect, receive and receipt for the Rents and apply the Rents to the payment of the Debt and to demand, sue for and recover the Rents when due and payable;

3

(g) all of the right, title and interest of Mortgagor in and to all contract rights relating to the Mortgaged Property to the fullest extent such contract rights are assignable or transferable by Mortgagor, including, without limitation, and to the extent permitted by applicable law, all permits, licenses, certificates, consents, approvals, authorizations and other documents obtained or to be obtained in connection with the demolition, construction, use, operation or maintenance of the Premises or any portion thereof (collectively, "Permits"), all reciprocal easement, restrictive covenants and similar agreements (collectively, "REAs"), all appurtenances and utility rights pertaining to the Premises or any portion thereof, all zoning, land use, air rights and development agreements, all operating contracts, management agreements, service contracts, supply and maintenance contracts, equipment leases, warranties, guaranties and all other agreements affecting the Premises or any part thereof or used in connection with the management or operation thereof (to the extent assignable pursuant to the provisions of the applicable instrument or agreement creating or conferring such rights or benefits or pursuant to applicable law) together with all of the rights, reversions or equities now or hereafter appurtenant thereto (such Permits, REAs and other appurtenances, rights, contracts and agreements collectively, the "Contracts");

(h) any other property, whether real or personal, tangible or intangible, owned or held by Mortgagor in connection with the Premises or the business conducted by Mortgagor thereon, including, without limitation, appraisals, architectural and engineering plans, specifications and studies, soil, environmental and other reports relating to the Premises, license and contract rights, deposit accounts, accounts receivable, warranties, guaranties, catalogues, tenant lists, correspondence with present and future purchasers, tenants and suppliers, advertising materials relating to the Premises or the business conducted by Mortgagor thereon, telephone exchange numbers as identified in such materials, trade names, trademarks and logos relating to the Premises or the business conducted by Mortgagor thereon (subject to the rights of franchisors or licensors) and goodwill relating to the Premises or the business conducted by Mortgagor thereon;

(i) all rights of Mortgagor in and to any management agreement applicable to the Premises and any license or similar agreement affecting the management or operation of any part of the Premises, (subject in each case to the provisions thereof and any limitations set forth therein);

(j) all rights of Mortgagor in any association or similar group having responsibility for managing or operating any part of the Premises;

(k) all claims against any person or entity with respect to any damage to or loss of the Mortgaged Property, including, without limitation, damage arising from any defect in or with respect to the design or construction of the Improvements or the Equipment and any damage resulting therefrom and all the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property;

(l) all deposits or other security or advance payments, including rental payments made by or on behalf of Mortgagor to others, with respect to utility services,

4

cleaning, maintenance, repair and similar services, refuse removal and sewer service, parking and similar services and rights, and rental of Equipment relating to or otherwise used in the operation of the Mortgaged Property;

(m) all options in connection with the purchase, lease, encumbrance or other disposition of the Mortgaged Property or any interest therein; and

(n) any and all other, further or additional rights, title, estates and interests which Mortgagor may now own or hereafter acquire, in and to the Premises and/or the Mortgaged Property, and all renewals, substitutions and replacements of and all additions and appurtenances to the Premises and/or the Mortgaged Property constructed, assembled or placed by Mortgagor on the Premises, and all conversions of the security constituted thereby which, immediately upon such acquisition, construction, assembling, placement or conversion, as the case may be, and in each such case without any further mortgage, conveyance, assignment or other act by Mortgagor, shall become subject to the lien of this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor, Mortgagor expressly agreeing that if Mortgagor shall at any time acquire any other right, title, estate or interest in and to the Premises and/or the Mortgaged Property, the lien of this Mortgage shall automatically attach to and encumber such other right, title, estate or interest as a lien thereon.

AND, as additional security, Mortgagor hereby grants to Mortgagee a security interest in (a) the Equipment, (b) the Personal Property, (c) the Condemnation Proceeds, (d) the Insurance Proceeds, (e) the Refunds, (f) the Leases, (g) the Rents, (h) the Contracts, (i) any management agreement applicable to the Premises, (j) the other items listed above in the Granting clauses, and (k) all proceeds of the foregoing, in each case whether now owned or hereafter acquired (collectively, the "Security Interest Property"), and this Mortgage shall be effective as a security agreement pursuant to the Code.

AND, Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Mortgagee all Leases, Rents, royalties, issues, profits, revenue, income, accounts, proceeds and other benefits of the Premises, whether now due, past due or to become due, including all prepaid rents and security deposits.

AND, the Mortgagor hereby releases and waives all rights under and by virtue of any homestead, stay, appraisement, or exemption laws that may now exist or hereafter be enacted;

**TO HAVE AND TO HOLD** the same unto the Mortgagee, the Mortgagee's successors, and assigns, forever as to all property conveyed in fee simple, and, as to leasehold interests in real property, for the unexpired residue of the term of said lease; and as to any other property, absolutely.

Mortgagor covenants and agrees with Mortgagee as follows:

2. **Payment**

Mortgagor will pay the Settlement Amount as provided in the Agreement, and shall

continue to be liable for the payment of said Settlement Amount until it has been paid in full, notwithstanding any action of partial foreclosure that may be brought by the holder of this mortgage to recover any amount or amounts for installments of principal, interest, taxes, assessments, water rates, or insurance premiums.

3. **Insurance**

Mortgagor will keep all the buildings and Improvements on the Premises insured against loss by fire and other risks included in the standard form of extended coverage insurance and shall name Mortgagee as mortgagee on the policy. The amount shall be for the full replacement value of the buildings on the Premises. Upon request, Mortgagor will deliver evidence of coverage to Mortgagee. If Mortgagor fails to keep the buildings insured Mortgagee may obtain the insurance and add the cost of the insurance to the debt due hereunder.

4. **Improvements and Alterations**

No building, structure, or improvement on the Premises shall be removed, demolished, or structurally altered in whole or in part without the prior written consent of Mortgagee.

5. **Events of Default**

The whole of the principal balance the Settlement Amount shall immediately become due and payable, at the option of Mortgagee, upon the happening of any of the following (collectively, "Events of Default"):

    (a)    The removal, material alteration or demolition of any building on the mortgaged Premises or the commission of any waste on the mortgaged Premises;

    (b)    Mortgagor deserting or abandoning all or any portion of the Mortgaged Property;

    (c)    Removal of any Equipment or Personal Property covered by this Mortgage;

    (d)    Failure of Mortgagor to notify Mortgagee in writing within ten (10) days after any loss or damage caused by fire or other casualty to the mortgaged Premises and prior to the making of any repairs thereto, or the refusal of Mortgagor to permit Mortgagee to inspect such loss or damage prior to the making of any repairs;

    (e)    Any sale or transfer of the of the Premises, whether voluntary or involuntary or by operation of law, whether of record or not, and whether or not for consideration or to secure any debt;

    (f)    The cancellation, expiration or termination of that certain contract for the sale of the Premises from Mortgagor to WINNDEVELOPMENT COMPANY LIMITED PARTNERSHIP;

6

(g) Failure of Mortgagor to pay any installment of the principal on its due date, or interest within ten (10) days from the date the same becomes due and payable, or any tax or water rate, assessment, or payment in lieu of taxes in full within ten (10) days from the date any of them become due and payable;

(h) Failure of Mortgagor to maintain the Improvements in a rentable or tenantable state of repair, or to comply with any other order or notice of violation of law of any municipal or State authority having jurisdiction of the Premises within two (2) months after the making of any such order;

(i) Sale or transfer of substantially all of the assets of or transfer of a controlling interest in Menorah Campus, Inc.;

(j) Failure of Mortgagor to maintain insurance as required by any of the Transaction Documents;

(k) If the Mortgagor 1) becomes insolvent or unable to pay its debts as they mature; 2) for any reason suspends transaction of or ceases to carry on a substantial part of its business; 3) files a voluntary petition in bankruptcy, or a voluntary petition seeking reorganization, or to effect a plan, composition or other arrangement with creditors under any federal or state law relating to bankruptcy, insolvency or relief of debtors; 4) has filed against it an involuntary petition in bankruptcy or an involuntary petition seeking reorganization, or to effect a plan, composition or other arrangement with creditors under any federal or state law relating to bankruptcy, insolvency or relief of debtors and such petition will not have been stayed or vacated within sixty (60) days of such filing; 5) makes a general assignment for the benefit of creditors or to an agent or trustee authorized to liquidate any substantial portion of its assets; 6) applies for or consents to the appointment of any receiver or trustee for all or any portion of its property or assets; or 7) has any material assets attached, seized, levied upon or otherwise become subject to any order of restraint or sequestration and fails to bond or otherwise obtain the discharge or satisfaction of any such seizure, levy, order of restraint or order of sequestration;

(l) If any representation or warranty made by the Mortgagor in any Transaction Document proves to have been false or erroneous in a material respect when made;

(m) Failure by the Mortgagor to pay or perform any other obligation relating to any debt or for the lease of property or to any collateral security for any of the foregoing, whether to the Mortgagee or others, which failure would permit the acceleration before stated maturity of such obligation which is not cured within ten (10) days of such default. Notwithstanding the foregoing, such cure period will be extended only for those defaults not reasonably able to be cured within ten (10) days, but only as long as the Mortgagor commences appropriate action to cure such default within such ten (10) day period and continues to work diligently and continuously to cure such default thereafter, with such proof to be provided to the Mortgagee together with such documentation as may be reasonably requested by the Mortgagee;

7

(n) Failure to keep, observe and perform any of the other warranties, covenants, conditions or agreements contained in any of the Transaction Documents, other than those set forth above, after the expiration of any cure period, if any; or

(o) If the Settlement Amount is not paid in full to Mortgagee on or before the earlier of the following: (i) the closing of the sale of the Premises to Winndevelopment Company Limited Partnership; or (ii) February 1, 2025 (the "Maturity Date").

**6. Remedies**

If any one or more of the Events of Default shall occur, then and in any such event Mortgagee shall have the right of acceleration and all other remedies provided in this Mortgage or in the Agreement or otherwise provided in any Transaction Document, by law or statute or in equity, all of which rights and remedies shall, to the fullest extent permitted by law, be cumulative. To the extent the laws of the State limit or deny (i) the availability of the exercise of any of the remedies set forth below, including without limitation, the remedies involving a power of sale on the part of the Mortgagee and terms of this Mortgage, or (ii) the enforcement of waivers and indemnities made by Mortgagor, such remedies, waivers or indemnities shall be exercisable or enforceable, any provisions in this Mortgage to the contrary notwithstanding, if, and only to the extent, permitted by the laws of the State in force at the time of the exercise of such remedies or the enforcement of such waivers or indemnities without regard to the enforceability of such remedies, waivers or indemnities at the time of execution and delivery of this Mortgage. Such rights and remedies of Mortgagee shall include, without limitation, the following:

<u>Possession, Management and Income</u>. Mortgagor, upon written demand of Mortgagee, shall forthwith surrender to Mortgagee the actual possession of the Mortgaged Property, and Mortgagee and such officers or agents as it may appoint, (i) may enter and take possession of the Mortgaged Property together with the books, papers and accounts of Mortgagor relating thereto, (ii) may dispossess Mortgagor, its agents and servants and all other persons therefrom, (iii) may hold, operate and manage the Mortgaged Property and from time to time make all necessary repairs and such alterations, additions, advances and improvements as Mortgagee shall deem prudent, (iv) may receive the Rents thereof and exercise all rights and powers of Mortgagor with respect to the Mortgaged Property and the Improvements, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants (in accordance with applicable law), and demand, sue for, collect and receive all Rents and may pay therefrom all costs and expenses of so taking, holding and managing the Mortgaged Property, including, without limitation, reasonable compensation to Mortgagee's agents and attorneys, all prior or coordinate liens and encumbrances, all Impositions and other assessments and other charges then due or thereafter accruing, and all expenses of such repairs, alterations, additions, improvements and other disbursements made by Mortgagee pursuant to the terms hereof, and Mortgagee may apply the remainder of the monies so received by it to the payment of the unpaid principal of, and interest and premium, if any, on, the Agreement, and (v) may succeed to all the rights of Mortgagor, including any rights to unearned premiums, in and to any insurance policies covering all or any portion of the Premises, the Improvements, the Personal Property and/or the Equipment, including the right to receive Refunds, Insurance Proceeds and Condemnation

8

Proceeds which would otherwise be payable to Mortgagor pursuant to this Mortgage. Mortgagee shall not be subject to any liability for, or by reason of, any such entry, taking possession, exclusion, holding operation or management, except for willful, wrongful acts or omissions or gross negligence of Mortgagee;

Partial Foreclosure. Mortgagee, at its option, may foreclose this Mortgage for any portion of the Debt which is then due and payable; provided, however, that if a partial foreclosure sale is made, such sale shall be subject to the continuing lien of the Transaction Documents for the unmatured part of the Debt; and such sale shall not in any manner affect the unmatured part of the Debt, but as to such unmatured part thereof, and the lien thereon, the same shall remain in full force and effect as though no foreclosure had occurred. Several foreclosure sales may be made pursuant to partial foreclosures without exhausting the right of full or partial foreclosure sale for any unmatured part of the Debt, it being the purpose to provide for a partial foreclosure sale of the Debt for any matured portion of the Debt without exhausting the power to foreclose and to sell the Mortgaged Property pursuant to such partial foreclosure for any other part of the Debt, whether matured at the time or subsequently maturing, and without exhausting any right of acceleration and full foreclosure. Notwithstanding the filing of any partial foreclosure or entry of a decree of sale therein, Mortgagee may elect at any time prior to a foreclosure sale pursuant to such decree to discontinue such partial foreclosure and to accelerate the Debt by reason of any uncured Event of Default upon which such partial foreclosure was predicated or by reason of any other Events of Default and proceed with full foreclosure proceedings;

Suits. Mortgagee, at its option, may, either with or without first taking possession, proceed by suit or suits in equity and/or at law, or by any other appropriate remedy or proceeding, to protect and enforce Mortgagee's rights hereunder whether for the specific performance (to the extent permitted by law) of any covenant or agreement contained herein or in the Agreement or for an injunction against the violation of any of the terms hereof or thereof or in aid of the exercise of any right, power or remedy granted to Mortgagee herein or therein, or to enforce the payment of the Agreement, or to foreclose the lien and security interest of this Mortgage against the Mortgaged Property or any part thereof and to have all of the Mortgaged Property or any part thereof sold in one or more sales (as an entirety or in parcels) under the judgment or decree of a court of competent jurisdiction or otherwise. All rights of action under this Mortgage or in respect of the Agreement may be enforced by Mortgagee, without the possession of the Agreement and without the production thereof at any trial or other proceeding relative thereto to the extent permitted by law;

Receiver. To the extent permitted by law and without the necessity to prove the value or occupancy of the security or the solvency or insolvency of any person then legally or equitably liable for payment of the Debt, Mortgagee shall be entitled as a matter of right, *ex parte* and without notice, to the appointment of a receiver to enter upon and take possession of the Mortgaged Property, perform all acts necessary or useful for the operation, use and maintenance of the Mortgaged Property and to collect all Rents thereof and apply the same and to exercise such other powers as are permitted by applicable law and the court making such appointment may direct and Mortgagor hereby consents to the appointment of such receiver. The expenses, including receiver's fees, reasonable

9

attorneys' fees, costs and disbursements and agent's compensation, incurred pursuant to the powers herein contained shall be secured by this Mortgage. The right to enter and take possession of and to manage and operate the Mortgaged Property, and to collect the Rents, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for Rents actually received by Mortgagee, whether received pursuant to this subparagraph 21(d) or subparagraph 21(a). Notwithstanding the appointment of any receiver or other custodian, Mortgagee shall be entitled as pledgee to the possession and control of any cash, deposits, or instruments at the time held by or payable or deliverable under the terms of this Mortgage to Mortgagee;

Sale in One Parcel. In the event of a sale, the Mortgaged Property may be sold in one parcel. Mortgagor hereby waives its rights, if any, to require that the Mortgaged Property be sold as separate units, tracts or estates;

Security Interest. In addition to the rights and remedies of Mortgagee set forth herein and in the Agreement and the other Transaction Documents, and not in lieu thereof, Mortgagee shall have all of the rights and remedies of a holder of a security interest under the Code, or under other applicable law with respect to the Security Interest Property and all rights and remedies provided or referred to herein and therein, shall, to the fullest extent permitted by applicable law, be cumulative;

Foreclosure. Mortgagee, at its option, may institute an action to foreclose this Mortgage, or take such other action as may be permitted and available to Mortgagee, at law or in equity, for the enforcement of the Transaction Documents and the realization on the Mortgaged Property or any other security held by Mortgagee, and proceed thereon through to final judgment and execution thereon for the Debt, including, without limitation, the prepayment premium, all accrued and unpaid interest and all costs of enforcement. In furtherance thereof, to the extent permitted by applicable law, Mortgagee shall have the full power and right to sell the Mortgaged Property and all estate, claim, demand, right, title and interest of Mortgagor therein and right of redemption thereof pursuant to an assent to a decree or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law or statute or in equity, it being agreed that in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, the Transaction Documents shall continue as a lien on the remaining portion of the Mortgaged Property. Mortgagor hereby assents to the passage of a decree for the sale of the Mortgaged Property upon the occurrence of an Event of Default by any court having jurisdiction; and

Power of Sale. To the extent permitted by Article 14 of the New York Real Property Actions and Proceedings Law, Mortgagee may commence a non-judicial foreclosure and as a result, sell, release and convey the Premises at public sale and execute and deliver to the purchasers at such sale, good and sufficient deeds of the conveyance, rendering any surplus funds, after payment of the Debt in full and the expenses of such sale, including reasonable attorneys' fees as provided by law, to Mortgagor.

10

Mortgagee shall be entitled, in its sole discretion, to exercise all or any of the rights and remedies provided herein or in any of the other Transaction Documents or which may be given by statute, at law or in equity, or otherwise in such order and manner as Mortgagee shall elect, without impairing Mortgagee's rights under any of the Transaction Documents and without affecting the liability of any person, firm, corporation, or other entity for the sums secured by the Transaction Documents.

### 7. Effect of Modification or Extension of Mortgage

The parties hereto, for and on behalf of themselves and their successors in interest, agree that, should any agreement be hereafter entered into modifying, extending, or changing the terms of this mortgage, the rights of the parties to such agreement shall, pursuant to the terms thereof, be superior to the rights of the holder of any subordinate lien, and Mortgagor and any subsequent obligor shall continue to be liable to pay the indebtedness hereby secured and shall be liable on all covenants herein contained.

### 8. Waivers

By accepting payment of any sum hereby secured after its due date, the Mortgagee shall not waive the Mortgagee's right to require prompt payment when due of all other sums so secured, or to exercise any legal rights the Mortgagee may have to collect any unpaid balance of the Settlement Amount. If the Mortgagee holds any additional security for any obligation secured hereby, the Mortgagee may enforce the sale thereof, at the Mortgagee's option, either before or contemporaneously therewith, or after the sale is made hereunder, and on any default of the Mortgagor, the Mortgagee may, at the Mortgagee's option, offset against any part of the Agreement secured hereby. Delay or failure of Mortgagee to take any action will not prevent Mortgagee from doing so later. Mortgagee may enforce those rights Mortgagee chooses without giving up any other rights.

### 9. Attorneys' Fees and Costs

In any lawsuit for the foreclosure of this Mortgage or for the collection of the debt, Mortgagee will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorney's fees to the amount owed to Mortgagee, which fees will become a part of the sum secured.

### 10. Severability

If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and shall in no way affect the validity of this Mortgage except that if such provision relates to the payment of any monetary sum, then Mortgagee may, at its option, declare the Debt immediately due and payable.

Signature page follow.

IN WITNESS WHEREOF, the parties have executed this instrument the day and year first hereinbefore written.

                **Mortgagor:**

                **MENORAH CAMPUS, INC.**

                _/s/ Kenneth A. Rogers_

                By: Kenneth A. Rogers
                Its: Board Chair

                **Mortgagee:**

                **SODEXO OPERATIONS, LLC**

                By:_____

STATE OF NEW YORK  )
            ) SS.:
COUNTY OF ERIE    )

  On the ____ day of February, 2024, before me, the undersigned, personally appeared Kenneth A. Rogers, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and he acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                _____
                Notary Public

                JONATHAN D. SCHECHTER
                No. 02SC6311202
STATE OF        )    Notary Public, State of New York
            ) SS.:  Qualified in Erie County
COUNTY OF      )    My Commission Expires Sept. 08, 20__

  On the ____ day of February, 2024, before me, the undersigned, personally appeared_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and he/she acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                _____
                Notary Public

IN WITNESS WHEREOF, the parties have executed this instrument the day and year first hereinbefore written.

Mortgagor:

**MENORAH CAMPUS, INC.**

By: Kenneth A. Rogers
Its: Board Chair

Mortgagee:

**SODEXO OPERATIONS, LLC**

By: _____

STATE OF NEW YORK  )
                                 )  SS.:
COUNTY OF ERIE        )

On the _____ day of February, 2024, before me, the undersigned, personally appeared Kenneth A. Rogers, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and he acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

STATE OF MARYLAND  )
                                 )  SS.:
COUNTY OF Montgomery )

On the 15th day of February, 2024, before me, the undersigned, personally appeared Joe Fraser, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and he/she acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*Pamela J. Wright*
Notary Public

```
PAMELA J. WRIGHT
Notary Public - State of Maryland
Prince George's County
My Commission Expires Jul 20, 2026
```

12

Case 1-25-10127-CLB, Doc 196-1, Filed 06/27/25, Entered 06/27/25 13:07:04, Description: Exhibit A, Page 14 of 15

Schedule A

Premises

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Amherst, County of Erie, and State of New York, being part of Lots Nos. 69 and 75, Township 12, Range 7 of the Holland Land Company's Survey, bounded and described as follows:

BEGINNING at a point in the westerly line of John James Audubon Parkway (as a 160 foot wide road) at its intersection with the south line of a Deed filed in the Erie County Clerk's Office in Liber 9820 of Deeds at page 76; thence westerly along the south line of said Liber 9820 of Deeds at page 76 at a bearing of S 89° 17' 59" W, a distance of 285.00 feet to a point; thence southerly along a line at a bearing of S 00° 42' 01" E, a distance of 302.50 feet to a point; thence northeasterly along a line at a bearing of N 69° 02' 34" E, a distance of 352.36 feet to a point on the said westerly line of John James Audubon Parkway; thence northerly along the said westerly line of John James Audubon Parkway and along a curve to the right having a cord bearing of N 14° 52' 11" W, a radius of 2730.0 feet and an arc distance of 186.20 feet to the point and place of beginning.

TOGETHER WITH the benefits of a Declaration of Covenants, Conditions and Easements for Access, Ingress and Egress, Utility Lines and Parking and Revocable License for Walkway made by Menorah Campus, Inc. and Total Aging In Place Program, Inc. dated September 1, 2013 and recorded September 23, 2013 in Liber 11253 of Deeds at page 4979, as amended by First Amendment to Declaration of Covenants, Conditions and Easements for Access, Ingress and Egress, Utility Lines and Parking and Revocable License for Walkway made by Menorah Campus, Inc. and Total Aging In Place Program, Inc. dated as of March 1, 2014 and recorded April 9, 2014 in Liber 11262 of Deeds at page 6401.