UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

MENORAH CAMPUS, INC., d/b/a THE HARRY AND JEANETTE WEINBERG CAMPUS, *ET AL.*,

Jointly Administered

Debtors.

Chapter 11

Case No. 1-25-10127-CLB

[This Motion Has Been Assigned to Hon. Michael J. Kaplan]

**FOUNDATION FOR JEWISH PHILANTHROPIES INC'S, OMNIBUS REPLY TO OBJECTIONS OF DEBTORS, RANDI DRESSEL, AND SODEXO OPERATIONS, LLC, TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

The Foundation for Jewish Philanthropies, Inc. ("FJP"), respectfully submits this Omnibus Reply (the "FJP Reply") to Menorah Campus, Inc's (the "Debtor") objections ("Debtors' Opposition") [Docket No.197], Sodexo Operations, LLC's ("Sodexo") opposition ("Sodexo's Opposition") [Docket No. 196], and Randi Dressel's ("Dressel") opposition ("Dressler's Opposition") [Docket No. 199], (collectively, Debtor's Opposition, Sodexo's Opposition and Dressler's Opposition referred to herein as the "Opposition")[1] to FJP's Motion for Relief from the Automatic Stay (the "Stay Relief Motion") [Docket. No. 184], and states as follows:

**PRELIMINARY STATEMENT**

1. The Opposition fails to demonstrate valid factual, legal or equitable arguments to deny the pending Stay Relief Motion. The Objections mischaracterize the facts or misapplies

---

[1] Joinder of David M. Dunkelman does not require a reply from FJP.

1

applicable law. FJP has established "cause" for relief, including Debtors' continued default, lack of adequate protection, and absence of any equity in the Stovroff Towers.[2]

2. Whether premised upon the spurious supposition that FJP is adequately protected or that the Debtor has equity in the Stovroff Towers (defined below), or that the Property (as defined below) is necessary for Debtor's reorganization, the undisputed facts do not support any of these contentions. As discussed in greater detail below;

- The Debtor has not provided or offered any form of adequate protection to FJP;

- The alleged collateral sources of alternate recovery or reduction of FJP's secured indebtedness are speculative and uncertain. Should these sources materialize, said funds are the sources from which a separate FJP loan must first be repaid;

- There is no evidence that the Debtor has any equity in Stovroff Towers; to the contrary, the evidence demonstrates otherwise;

- Stovroff Towers is peripheral to the Debtors scheme of liquidation and not necessary to any eventual liquidation plan;

- Debtor has failed prepetition and post-petition to actively pursue the sale of Stovroff Towers; and

- Stovroff Towers is not necessary for the Debtor's course of liquidation.

3. The Court should overrule the Opposition and grant FJP's Stay Relief Motion.

**RELEVANT BACKGROUND**

4. On June 18, 2025, FJP filed the subject Stay Relief Motion with regard to the real property and improvements located at 471 John James Audubon Parkway, Amherst, New York denominated as Stovroff Towers (the "Property" or "Stovroff Towers").

---

[2] Any capitalized term not defined herein shall have the meaning ascribed to it in the Motion.

5. On June 27, 2025, two creditors of the Debtor, Sodexo and Dressel, both filed objections to the Stay Relief Motion. [respectively, Docket No. 196; Docket No. 199]. Also on June 27, 2025, the Debtors filed an objection to the Stay Relief Motion. [Docket No. 197].

6. Dressel's opposition raises no independent points and entirely relies upon the arguments set forth in Sodexo's Opposition and Debtors' Opposition [Docket No. 199, ¶ 5].

7. The Opposition principally relies upon the following three arguments: (i) that FJP is adequately protected; (ii) that the Property is necessary for an orderly liquidation; and (iii) the equitable doctrine of marshaling requires FJP to seek payment from other collateral before foreclosure on the Property. [Docket No. 196; 197; 199].

8. The Opposition is without merit and lacks legal or factual support. It relies on speculation and false assumptions as discussed herein.

9. To the extent that the Opposition argues that FJP has not submitted evidence of the Loan Facility and the indebtedness due thereunder, this is a ludicrous proposition. The Stay Relief Motion appended the underlying loan documentation and the Debtor's bankruptcy schedules clearly list FJP as a secured creditor that is owed approximately Five Million and No/100 Dollars ($5,000,000.00) without any reference to FJP's secured claim being disputed, contingent or unliquidated. This is prima facia uncontroverted evidence of the validity of the indebtedness.[3]

## **FJP IS NOT ADEQUATELY PROTECTED**

10. While the Stay Relief Motion is primarily based upon the elements of 11 U.S.C. § 362(d)(2), any arguments premised upon 11 U.S.C. § 362(d)(1) are equally unavailing.

11. The moving party has the burden to make a *prima facie* showing that "cause" exists for relief from the stay. *See In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1285 (2nd Cir. 1990). "The

---

[3] The total amount of the Loan Facility will be determined in the state court foreclosure action.

burden of proof on a motion to lift the automatic stay is a shifting one; section 362(d)(1) requires an initial showing of cause by the movant, while section 362(g) places the burden of proof on the debtor for all issues other than the debtor's equity in property."[4] *In re Kaplan Breslaw Ash, LLC,* 264 B.R. 309, 321–322 (Bankr. S.D.N.Y. 2001) ("cause" existed under Section 362(d)(1) where "no adequate protection payments whatever have been made or proffered"). *In re Balco Equities Ltd., Inc.,* 312 B.R. 734, 749 [Bankr. S.D.N.Y. 2004].

12. The Opposition contends that FJP is "adequately protected" but offers no evidence to support this, only abstract and theoretical assertions. The Debtor has not provided any form of post-petition debt service, or even interest only payments, nor do the various post-petition budgets include any adequate protection payments.

13. "The standards for lifting the stay set forth in Section 362(d)(1) and (2) are in the disjunctive; if the court finds either that the secured creditor has not been provided adequate protection or that the debtor lacks equity in the collateral and has no need for the property to effectively reorganize, the court must lift the stay." *See* M.Bienenstock, *Bankruptcy Reorganization* at 133 (1987) (hereafter, *Bienenstock*); *In re Diplomat Elecs. Corp.,* 82 B.R. 688, 692 [Bankr. S.D.N.Y. 1988].

14. Lack of adequate protection is specifically mentioned as a ground for which the stay may be lifted 'for cause' under Section 362(d)(1). Section 361 of the Bankruptcy Code

---

[4] "A continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay.... Typically, however, cause will only be found where the failure to make monthly payments corresponds with a nonexistent equity cushion." *In re James River Assocs.,* 148 B.R. 790 (E.D. Va. 1992) (citations omitted) (affirming bankruptcy court's decision to lift the stay where "there was both a small or nonexistent equity cushion and a failure to make monthly payments for approximately 17 months (7 months since filing the bankruptcy petition)"). Even when a slight equity cushion exists, this does not constitute adequate protection where post-petition interest is accruing, and the debtor is not able to pay expenses as they come due. *See, e.g., In re Fortune Smooth (U.S.) Ltd.,* 1993 WL 261478 at *6 (Bankr. S.D.N.Y. July 6, 1993) (lifting the stay "for cause," notwithstanding an equity cushion of 14.89%, *i.e.,* the collateral was valued at $3.63 million and was encumbered by liens totaling $3.095 million)." *In re Balco Equities Ltd., Inc.,* 312 B.R. 734, 749 [Bankr. S.D.N.Y. 2004].

provides in relevant part that: When adequate protection is required under section 362 ... of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, and the use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, and the use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. *See In re Balco Equities Ltd., Inc.,* 312 B.R. 734, 749 [Bankr. S.D.N.Y. 2004].

15. When the automatic stay endangers "an interest of an entity in property" of the estate, that entity may receive "adequate protection" in the form of cash payments, a lien, or "such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." *Id.* § 361. *In re Dairy Mart Convenience Stores, Inc.,* 351 F.3d 86, 90 [2nd Cir. 2003].

16. A mortgagee lacks adequate protection for its interest when no periodic payments are being made, the entire indebtedness is due, and no income is derived from the property. *In re King*, 305 B.R. 152, 174-75 [Bankr. S.D.N.Y. 2004], *see also In re Boca Development Associates,* 21 B.R. 624, 630–631 (Bankr. S.D.N.Y. 1982).

5

17. Stovroff Towers consists of 120 studio apartments and at present the occupancy is only about 10%, generating negligible revenue. The occupancy likely will further erode with the passage of time and the Debtor is not pursuing new tenants. As such, the economics of the Property are declining and consequently its value is at significant risk of further diminishment.

18. Further, the plethora of liens and encumbrances, to the extent that are actually secured, continue to accrue post-petition interest and consume any value. The Debtor cannot make any good faith arguments that it has any equity in the Stovroff Towers and the passage of time only works to the detriment of FJP. See *In re King*, 305 B.R. 152, 174-75 [Bankr. S.D.N.Y. 2004].

19. In accordance with *In re King*, it is clear FJP lacks adequate protection as no periodic payments have been made, the entire indebtedness became due and payable on July 5, 2022, pursuant to the issued demand letter (the "Demand Letter"), and there is minimal income derived from the Property – in contrast with the growing interest accruals. A true and accurate copy of the Demand Letter is attached hereto as **Exhibit A**.

20. The Opposition contends that FJP is adequately protected due to security interests in "other valuable assets of Menorah Campus", namely the uncertain equity interest of the Debtor in Greenwood Residences Inc. ("Greenwood"), certain personal property, and the Debtor's membership interest in Fallon Health Weinberg ("Fallon Health") enterprise, these suppositions are meritless. [Docket No. 197, ¶ 11, 12; Docket No. 196, ¶ 26]. As discussed below in this Reply to the Oppositions' collateral marshalling proposition, the facts simply do not support this theory.

**THE OPPOSITION HAS FAILED TO DEMONSTRATE THAT THE DEBTOR HAS ANY EQUITY IN THE PROPERTY OR THAT THE PROPERTY IS NECESSARY FOR AN EFFECTIVE LIQUIDATION**

21. "Equity cushion is just one factor for bankruptcy courts to consider in deciding whether creditor's interest is adequately protected, or whether lack of adequate protection warrants

Case 1-25-10127-CLB, Doc 206, Filed 07/07/25, Entered 07/07/25 14:26:09, Description: Main Document, Page 6 of 15

relief from automatic stay; although equity cushion may by itself provide adequate protection under certain circumstances, this is not necessarily so, especially where Chapter 11 debtor does not exhibit sincere desire to speedily effectuate a reorganization."[5] Bankr. Code, 11 U.S.C.A. § 362(d). *In re King*, 305 B.R. 152 [Bankr. S.D.N.Y. 2004].

22. The Opposition does not provide any evidence that the Debtor has equity in Stovroff Towers, rather the Sodexo Opposition argues that FJP has not provided an appraisal of the Stovroff Towers. The Debtor attributes a value of Seven Million and No/100 Dollars ($7,000,000.00) in its amended bankruptcy schedules (the "Schedules") [Dkt. #59-Schedule of Assets, Part 9 at 55.7] which valuation, although speculative, is predicated upon a 2023 prepetition contingent Purchase and Sale Contract with WinnDevelopment Company Limited Partnership (the "Winn PSA").

23. It is respectfully submitted that, at best, this is the high watermark valuation of Stovroff Towers, based upon an outdated contract, with unfulfilled contingencies and expired benchmark dates. As discussed below in greater detail, the Debtor has not sought to assume the Winn PSA pursuant to Section 365, nor could it do so without substantial revisions and amendments to the Winn PSA. Stated otherwise, the Debtor would have to renegotiate the Winn PSA and then it would be subject to competitive bidding under the standard Section 363 protocols and institute an adversary proceeding under Section 363(f), to avoid liens and encumbrances. Curiously and noteworthy, the Debtor omitted the Winn PSA from its Schedules wherein it lists *executory contracts* [Dkt. # 59 Schedule G].

---

[5] "Although an equity cushion may by itself provide adequate protection under certain circumstances, this is not so especially when the Debtor does not show a sincere desire to speedily effectuate a reorganization...it would be a gross abuse of discretion to continue to protect debtor indefinitely just because he has equity in the properties. The argument that secured creditors are not harmed by delays if there is an equity cushion or if the properties are not exposed to jeopardy is merely telling one half the story." *In re King*, 305 B.R. 152 [Bankr. S.D.N.Y. 2004], see also *Daniels v. Certified Mortgage Corporation (In re Certified Mortgage Corp.),* 19 B.R. 369 (Bankr. M.D. Fla. 1982).

24. For the purposes of this Stay Relief Motion, it is reasonable to ascribe, at best, a tentative valuation of not more than Seven Million and No/100 Dollars ($7,000,000.00) to Stovroff Towers based upon the most recent arms-length Winn PSA. Further, the primary asset where the Debtor has focused its liquidation efforts and optimistic hopes in the sale of the Debtor's main campus located on North Forest Road (the "Main Campus"). It is actively engaged in a nationwide marketing campaign to procure offers in an effort to maximize the Main Campus' value, which is subject to a mortgage held by BK Getzville Campus LLC, with an indebtedness in excess of Twenty Million and No/0100 Dollars ($20,000,000.00). In that context, Stovroff Towers is a peripheral asset, with no ostensible equity that would materially benefit the Debtor's announced scheme of liquidation. There is no value for the Debtor to salvage from Stovroff Towers.

25. For purposes of Section 362(d)(2), "equity" is the difference between the value of the property and the total of the claims which it secures. *In re Diplomat Elecs. Corp.,* 82 B.R. 688, 692 [Bankr. S.D.N.Y. 1988]; see also *In re 6200 Ridge, Inc.,* 69 B.R. 837, 842 (Bankr. E.D. Pa. 1987); *First Agricultural Bank v. Jug End in the Berkshires, Inc. (In re Jug End in the Berkshires, Inc.),* 46 B.R. 892, 901 (Bankr. D. Mass. 1985); *accord Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 n. 2 (9th Cir. 1984).

26. In the Stay Relief Motion, FJP provided a true and accurate copy of the title search, which evidenced the numerous liens encumbering the Property having a face value of $8,354,023.13, [Docket No. 184, ¶ 16(b), *see* Exhibit G], and the FJP Loan Facility continues to accrue interest.

27. The Debtor offers no evidence to support WinnDevelopment's intentions. There are significant benchmark provisions and conditions of the Winn PSA that have passed without compliance or achievement, and relevant time periods have elapsed with no progress made in

8

accordance with the terms set forth therein, nor has the Debtor even issued a Time is of the Essence notice to WinnDevelopment.

28. Section 2(c) of the PSA provided that WinnDevelopment was to submit a full application to New York Housing Finance Agency ("NYHFA") within twelve (12) months from the effective date, for 4% LIHTC funding and new tax-exempt bond financing. [Docket No. 197, *see* Exhibit B]. The effective date of the PSA is August 30, 2023, making the application submission required by August 30, 2024. [Docket No. 197, *see* Exhibit B]. Upon information and belief, no application with the NYHFA was ever submitted nor was the requisite tax-exempt bond financing sought or obtained. Neither the Debtor nor Winn Development have pursued any actions to advance the transaction; it has been functionally dormant for over twelve months. Even if the parties were to resume their obligations, upon Debtor's acknowledgement a closing could not occur until late 2026 or more probably sometime in 2027 [Dkt. #197 at ¶¶s 17-24].

29. The Winn PSA in its present form is moribund. Nevertheless, valuing Stovroff Towers at seven Million and No/100 Dollars ($7,000,000.00), while arguably a high watermark, it is a suspect valuation at best given the extant circumstances.

30. Additionally, the Opposition argues that the property is necessary to "further the interests of the estate through […] liquidation, but its reliance on the *Koopmans* case is unfounded. [Docket No. 197; ¶ 27], *In re Koopmans,* 22 B.R. 395 (Bankr. D. Utah 1982). The Court in *Koopmans* relied on the fact that the parcel was a rental property bringing in income and creating equity in the home. Here, as described above, any income being derived from Stovroff Towers is *de minimis* and steadily decreasing in correlation with increasing interest on the outstanding encumbrances on the property.

9

Case 1-25-10127-CLB, Doc 206, Filed 07/07/25, Entered 07/07/25 14:26:09, Description: Main Document , Page 9 of 15

31. The Opposition also relied on the *Kadlubek* case. [Docket No. 196, ¶ 24], *Kadlubek Family Revocable Living Tr.,* 545 B.R. In *Kadlubek*, the debtor was **solvent**, had monthly income, had made progress in formulating a plan with a possibility of confirmation within a reasonable time, and was making monthly payments.[6]" *Id*; *see also* In re White Plains Dev. Corp., 140 B.R. 948, 951 (Bankr. S.D.N.Y 1992).

32. Justifying the granting of stay relief is the lack of adequate protection, an asset on which the Debtor lacks any equity and which is not necessary for its supposed plan of liquidation.

## MARSHALLING OF ASSETS IS NOT JUSTIFIED OR APPROPRIATE

33. As an equitable doctrine, marshaling of assets will not be ordered where the rights of a senior creditor will be compromised by its application. *In re Tampa Chain Co., Inc.,* 53 B.R. 772 [Bankr. S.D.N.Y. 1985].

34. Three elements must be established to invoke marshaling: "(1) the existence of two secured creditors with a common debtor, (2) the existence of two funds belonging to the debtor, and (3) the right of the senior secured creditor to receive payment from more than one fund while the junior secured creditor can only resort to one fund." Arlco, 239 B.R. at 274; see *In re Joanette*, 74 Bankr. Ct. Dec. 73 [Bankr. N.D.N.Y. Feb. 12, 2025].

35. The marshaling proponent must prove all three elements by clear and convincing evidence. *Id*.; *see also In re Vermont Toy Works, Inc.*, 135 B.R. 762, 767 (D. Vt. 1991), *In re Joanette*, 74 Bankr. Ct. Dec. 73 [Bankr. N.D.N.Y. Feb. 12, 2025].

---

[6] In the *Kadlubek* case, the Debtor's estate is solvent…Debtor has enough cash flow to make principal and interest payments while the Property is re-tenanted and marketed….Debtor could make monthly payments, sell unencumbered property, and/or could grant [creditor] liens on unencumbered property while Debtor rehabilitates and sells the Property The Debtor has a reasonable chance of confirming a plan in the near future. A confirmation hearing is scheduled within 30 days. Without getting into detail about the proposed plan, it is not "unconfirmable on its face." Furthermore, it seems to the Court that a solvent debtor with current monthly income and a willingness to liquidate as needed to pay creditors in full should be a good candidate to confirm a plan of liquidation. *In re Kadlubek Family Revocable Living Tr.,* 545 B.R. 660, 668 [Bankr. D.N.M. 2016].

36. Marshaling will not be applied if will be prejudice a senior creditor, or if the creditor "would be delayed or inconvenienced in the collection of the debt owed it." *Arlco,* 239 B.R. at 274; *see In re Prichard*, 170 B.R. 41, 45 (Bankr. N.D.N.Y. 1994); *In re Leonardo*, 11 B.R. 453, 455 (Bankr. W.D.N.Y. 1981), *In re Joanette*, 74 Bankr. Ct. Dec. 73 [Bankr. N.D.N.Y. Feb. 12, 2025].

37. Here, the Opposition argues that FJP should seek payment from other sources of collateral and "it is Debtor's intent to pay FJP from other assets, to make proceeds available for these junior creditors." [Docket No. 197, ¶ 35]. The Opposition continued "the satisfaction, partial or full, of FJP's claim from other collateral other than the Property will create equity in the Property for the junior lien holders and, potentially, unsecured creditors…substantial satisfaction of FJP's claim from other collateral would reduce the total liens on the Property to less than the purchase price to WinnDevelopment and result in proceeds available for distribution to unsecured creditors". [Docket No. 197, ¶ 29].

38. This contention is without factual support, largely fantastical and completely misapplies the doctrine of marshaling. To ask the court to consider the interests of unsecured and junior creditors over the interests of senior secured creditors is prohibited.[7] *See In re Multiple Services Industries, Inc.,* 18 B.R. at 637; *cf. McElwaney,* 40 B.R. at 72 (marshaling denied where it would result in unsecured creditors being enriched at the expense of secured creditors). *In re Tampa Chain Co., Inc.,* 53 B.R. 772, 781 [Bankr. S.D.N.Y. 1985].

---

[7] The Court in Joanette reasoned "FSA bargained for its claims to be secured by first priority liens on real *and* personal property. Stripping FSA of its first priority in the personal property proceeds deprives it of the benefit of that bargain in favor of Bourdeau, which extended credit to Debtors secured only by a second lien on personal property". *See Leonardo*, 11 B.R. at 455 ("It would be inequitable to treat Central Trust Company, Westinghouse and Small Business Administration equally since Central Trust Company bargained for and obtained additional security which Westinghouse and Small Business Administration failed to do."). *In re Joanette,* 74 Bankr. Ct. Dec. 73 [Bankr. N.D.N.Y. Feb. 12, 2025].

39. The Opposition contends that FJP should be forced to seek recovery from the net proceeds of the sale of Greenwood and Menorah Campus's ownership interest in Fallon Health. [Docket No. 197, ¶ 11, 12; Docket No. 196, ¶ 26].

40. The Opposition fails to take into account that FJP provided a separate loan facility to the Debtor on January 26, 2016, in the principal amount of Five Hundred Fifty Thousand and No/100 Dollars ($550,000.00) (the "$550,000 Secured Loan"). A true and accurate copy of the Loan is attached hereto as **Exhibit B**.

41. The entire indebtedness due pursuant to the subject mortgage Loan Facility and the $550,000 Secured Loan, became due and payable on July 5, 2022, pursuant to the Demand Letter.

42. FJP's other collateral identified by the Opposition, specifically Greenwood and Fallon Health, as potential avenues of recovery are speculative, uncertain and should these sources bear fruit, it would provide for the collection against the $550,000.00 Secured Loan, which is not secured by Stovroff Towers.

43. "When marshaling is applied, the senior creditor is compelled to seek recourse against "readily available collateral" in which the junior lienholder has no interest*." See In re Arlco, Inc.,* 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999). *In re Joanette,* 74 Bankr. Ct. Dec. 73 [Bankr. N.D.N.Y. Feb. 12, 2025].

44. Pursuant to the order authorizing the Debtor to direct its wholly owned subsidiary to sell real estate, dated May 2, 2025, the Debtor was authorized to consummate the sale of Greenwood (the "Greenwood Sale Order"). [Docket No. 136, ¶ 3]. Pursuant to the Order, "any distribution of proceeds generated from the sale … shall be held in escrow pending further order of this Court". [Docket No. 136, ¶ 5].

45. Upon information and belief, the sale proceeds from the sale of Greenwood are being held in abeyance as the New York State Attorney General is considering applying said proceeds for a similar charitable purpose under the doctrine of *cy pres*. There is a significant likelihood that FJP may receive nothing from these proceeds.

46. The Opposition's contention that FJP can seek repayment from its interest in Debtors' membership in Fallon Health is even more speculative. For several years Debtors' counsel has been in on again-off again negotiations with Fallon Community Health Plan ("<u>Fallon</u>") regarding liquidating Debtors' 30% membership interest. Without any modicum of success, since 2021 the Debtor has pursued periodic negotiations with its majority co-member, Fallon, in an effort to achieve a buy-out of the Debtor's minority interests. In fact, a protracted yet unsuccessful arbitration process was pursued, at great expense to the Debtor, that failed to achieve a resolution. Upon information and belief, there was a proposal from Catholic Health to purchase the Fallon Weinberg Health enterprise, which was rejected by Fallon. Given the almost 5-years of frustrated efforts, pinning any expectations of monetizing the Debtor's membership interest is remote, speculative and uncertain. Again, any sale of the Debtor's membership interests in the enterprise would be subject to NYS regulatory approvals and the standard Section 363 protocols, a process not likely to engender support from Fallon.

47. The notion of equitable marshaling is beyond serious consideration. For the reasons stated above, neither the sale of the Stovroff Towers nor the sale of the Fallon Weinberg membership interest are palpable, imminent, certain, or within reasonable prospects.

48. Further, there is no justification to compel a secured creditor who bargained for a first-priority mortgage - who would otherwise receive immediate payment in full from a foreclosure - to wait and hope for some recovery from speculative and uncertain collateral sources.

*See Arclo,* 239 B.R. at 274 ("The senior secured creditor will not be required to proceed first against a fund that requires more rigorous procedures to collect upon if it has a fund 'more directly available' to it that can be 'easily reduced to money.'") (quoting *Prichard*, 170 B.R. at 45). *Id.*

49. The *Joanette* Court further reasoned, even assuming "*arguendo* that *de minimis* delay or modest inconvenience to the senior creditor should be considered insufficiently prejudicial to prevent marshaling, the delay and inconvenience proposed here are well beyond *de minimis* and modest" … proponent has "failed to meet its burden of establishing that the extraordinary remedy of marshaling is equitable". *In re Joanette*, 74 Bankr. Ct. Dec. 73 [Bankr. N.D.N.Y. Feb. 12, 2025].

50. The doctrine of marshaling cannot be applied under New York law, if it is shown that creditor holding superior lien will be delayed or inconvenienced in collection of its debt. *In re Prichard*, 170 B.R. 41 [Bankr. N.D.N.Y. 1994].

51. The Opposition has failed to demonstrate that FJP could recover on its secured claim from any other "readily available collateral" that would neither delay nor inconvenience recovery of its first-priority mortgage, as opposed to enforcing their rights to foreclose on the Property. The alternative suggested sources identified by the Opposition are speculative and uncertain

52. As such, marshaling in the foregoing would clearly compromise and prejudice FJP's rights as a senior secured creditor and is not appropriate or equitable.

53. Thus, FJP has met its burden to show cause for relief by way of the law and evidence presented in the Stay Relief Motion. The burden shifted to the parties filing the Opposition to demonstrate adequate protection or equity in Stovroff Towers, and they have failed

14

to do so. 11 U.S.C. § 362 (g). Nothing presented by the Opposition evidences anything to meet this burden.

54. For all the reasons set forth in FJP's Stay Relief Motion and this Reply, the Court should overrule the objections of the Debtors, Sodexo, and Dressel, and grant FJP relief from the automatic stay under 11 U.S.C. § 362(d).

WHEREFORE, FJP respectfully requests that this Court:

1. Overrule the objections in their entirety;

2. Grant FJP relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to permit FJP to foreclose upon the first mortgage encumbering Stovroff Towers;

3. Preserve FJP's right to assert a deficiency claim, if any; and

4. Grant FJP such other and further relief as the Court may deem just and proper.

DATED: July 7, 2025
Buffalo, New York

Respectfully submitted,

s/ *Raymond L. Fink*
Raymond L. Fink, Esq.
Rebecca S. Izzo, Esq.
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Phone: (716-853-5100)
Email: rfink@lippes.com
rizzo@lippes.com